UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X   Index No.:
ELDIVINE ALLAH-EL and VALENTINE PEREZ,

                               Plaintiffs,                             **COMPLAINT**

          -against-

ACACIA NETWORK, INC., and CHARLENE
STRICKLAND, individually,                           Plaintiffs Demand A
                                                                              Trial by Jury

                               Defendants.
-------------------------------------------------------------------X

Plaintiffs, by and through their attorneys, Phillips & Associates, PLLC, hereby complain of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiffs complain pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e *et seq.* ("Title VII") and to remedy violations of the New York State Executive Law, and the Administrative Code of the City of New York, based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiffs have suffered as a result of being harassed and discriminated against by their employer on the basis of their sex/gender, together with sexual harassment, creating a hostile work environment, retaliation, and constructive discharge.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. 2000e *et seq.*, 28 U.S.C. §1331, §1343, and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

1

4. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. §1391(b).

5. On or about October 7, 2019, Plaintiffs filed charges of discrimination with the New York State Division of Human Rights which were dual filed with the Equal Employment Opportunity Commission ("EEOC").

6. On or about August 25, 2020, Plaintiff ELDIVINE ALLAH-EL (hereinafter also referred to as "ALLAH-EL") received a Notice of Right to Sue Letter from the EEOC.

7. On or about August 27, 2020, Plaintiff VALENTINE PEREZ (hereinafter also referred to as "PEREZ") received a Notice of Right to Sue Letter from the EEOC.

8. This action is brought within ninety (90) days of said Notice of Right to Sue Letters.

## PARTIES

9. Plaintiff ALLAH-EL is a male resident of the State of New York, County of Bronx.

10. Plaintiff PEREZ is a male resident of the State of New York, County of Kings.

11. At all times material, Defendant ACACIA NETWORK, INC. (hereinafter also referred to as "ACACIA NETWORK") was and is a domestic not-for-profit corporation duly incorporated under the laws of the State of New York.

12. Defendant ACACIA NETWORK maintains a shelter called the Ruth Fernandez Family Residence located at 760 Fox Street, Bronx, NY 10455 ("Ruth Fernandez location").

13. At all times material, Defendant CHARLENE STRICKLAND (hereinafter also referred to as "STRICKLAND") was the "Manager" of the Ruth Fernandez location.

14. At all times material, Defendant STRICKLAND was Plaintiffs' supervisor and/or had supervisory authority over Plaintiffs.

15. Defendant ACACIA NETWORK and Defendant STRICKLAND are also collectively referred to as "Defendants."

16. At all times material, Plaintiffs were also members of the Special and Superior Officers Benevolent Association ("SSOBA"), a labor union that represents security personnel.

17. At all times material, Plaintiffs were employees of Defendants.

## MATERIAL FACTS

18. In or around Fall 2015, Plaintiff PEREZ began working for Defendant ACACIA NETWORK as a "Security Officer" and was regularly scheduled to work 4:00 PM to 12:00 AM, Sunday through Thursday.

19. On or about January 2, 2018, Plaintiff ALLAH-EL began working for Defendant ACACIA NETWORK as a "Security Officer" and was regularly scheduled to work 12:00 AM to 8:00 AM, Thursday through Monday.

20. From the beginning of their employment, until the time of Defendant STRICKLAND's hire, both Plaintiffs performed their duties without issue.

21. However, in or around July 2019, Plaintiffs' work environment dramatically changed when Defendant STRICKLAND began working as the Manager of the Ruth Fernandez location.

22. Defendant STRICKLAND created a sexually hostile work environment at Defendant ACACIA NETWORK and engaged in abusive discriminatory conduct toward Plaintiffs.

23. For instance, on or about August 24, 2019, at approximately 8:03 AM, Plaintiff ALLAH-EL was relieved from his post and went to the men's locker room to change out of his uniform.

**As Plaintiff ALLAH-EL undressed, and was wearing only his undergarments, Defendant STRICKLAND barged in to the men's locker room and began screaming that he needed to "punch out first and then change [his] clothes."** Horrified, Plaintiff ALLAH-EL replied, "This is the men's locker room. You can't be in here. I feel uncomfortable with you in here while I'm undressed." Plaintiff ALLAH-EL told Defendant STRICKLAND to leave twice because she refused to do so. Instead, Defendant STRICKLAND responded that she was allowed to enter the locker room whenever she wanted because management's property was there. The incident was captured on Defendant ACACIA NETWORK's video surveillance.

24. Feeling humiliated and violated, Plaintiff ALLAH-EL quickly got dressed and exited the men's locker room. Plaintiff ALLAH-EL was particularly distressed because he is a Muslim man and Defendant STRICKLAND's conduct violated his religious tenet of upholding modesty.

25. Later that day, Plaintiff ALLAH-EL reported Defendant STRICKLAND's sexually harassing conduct to SSOBA's "Business Agent," Matilda Garcia. Plaintiff ALLAH-EL specifically stated that Defendant STRICKLAND entered the men's locker room while he was undressed, refused to leave even after he asked her to, and that he felt violated. Ms. Garcia responded via text message, "**[Y]ou are not the only one the delegate is also collecting statements from your fellow members about her behavior towards them, your (sic) not the only one going thru these experiences.**"

26. Shortly thereafter, Ms. Garcia told Plaintiff ALLAH-EL that she had spoken with Defendant ACACIA NETWORK's "Program Director," Mildred Martinez, about his complaint and that Defendants would investigate.

27. Nevertheless, even after he complained about what he reasonably believed was sexually

4

harassing conduct towards him, Plaintiff ALLAH-EL continued to be supervised by Defendant STRICKLAND.

28. On or about September 5, 2019, Plaintiff ALLAH-EL attended a meeting with Defendant ACACIA NETWORK's "Human Resources Manager," Erik Alicea, Ms. Martinez, SSOBA's "Vice President," Frank Ayala, Ms. Garcia, Defendant STRICKLAND, and Plaintiff PEREZ.[1]

29. During the meeting, Mr. Alicea claimed that the company could not take any remedial action against Defendant STRICKLAND because there was no proof of the locker room incident. However, during the meeting, Defendant STRICKLAND **admitted that she entered the men's locker room while Plaintiff ALLAH-EL was changing** under the pretext that one of Defendants' filing cabinets was in the locker room and she needed to access it at that moment.

30. Despite Defendant STRICKLAND's admission, as well as Plaintiff ALLAH-EL's explanation that the incident should have been captured on the company's video surveillance, Mr. Alicea took no corrective action and adjourned the meeting until video footage could be reviewed.

31. Immediately thereafter, emboldened by the lack of remedial action by management, and in order to further harass Plaintiff ALLAH-EL, Defendant STRICKLAND told him, "**I can go in the [men's] locker room whenever I want.**"

32. On or about September 27, 2019, Plaintiffs attended another meeting with Mr. Alicea and Defendant STRICKLAND, along with coworkers and members of the union, to address multiple complaints against Defendant STRICKLAND, including Plaintiff ALLAH-EL's sexual harassment complaint. During the meeting, to evade liability, Mr. Alicea falsely claimed that video footage of the locker room incident between Defendant STRICKLAND and

---

[1] Plaintiff PEREZ attended the meeting in his capacity as Plaintiff ALLAH-EL's union delegate.

Plaintiff ALLAH-EL could not be produced because it was automatically deleted after one week. Mr. Alicea told Plaintiff ALLAH-EL that the matter was a "he said, she said" and that his claims of sexual harassment could not be corroborated.

33. Defendant ACACIA NETWORK deliberately concealed video footage of the sexual harassment against Plaintiff ALLAH-EL.

34. At the conclusion of the meeting, fearing further harassment and retaliation, Plaintiff ALLAH-EL resigned. Based on management's request, Plaintiff ALLAH-EL agreed that his last day of employment would be October 31, 2019.

35. Following Plaintiff ALLAH-EL's sexual harassment complaints, Defendant STRICKLAND began to retaliate against him by creating intolerable working conditions, including but not limited to, violating his rights under SSOBA's collective bargaining agreement ("CBA"), engaging in unwarranted criticisms of his work performance, threatening him, and encouraging him to engage in conduct that violated company protocol.

36. For example, on or about September 28, 2019, with only thirty minutes left in his shift, and in violation of SSOBA's CBA[2], Defendant STRICKLAND told Plaintiff ALLAH-EL that he had to stay and work an eight-hour overtime shift. Defendant STRICKLAND deliberately failed to follow the CBA in retaliation for Plaintiff ALLAH-EL's sexual harassment complaint.

37. Defendant STRICKLAND also repeatedly accused Plaintiff ALLAH-EL of failing to properly conduct a complete patrol of the building because he did not go into the basement. However, pursuant to an October 16, 2018 memorandum from Defendant ACACIA NETWORK's "Program Director," James Baggett, "[e]ffective immediately, at no time unless authorized by

---

[2] The CBA requires at least two hours' notice for overtime shifts, unless an emergency.

Program Director or Benjamin Aponte (Maintenance Supervisor), no Security personnel is allowed to enter the basement area … Failure to acknowledge and or adhered (sic) to this directive can and will lead to further disciplinary action" **Defendant STRICKLAND purposefully directed Plaintiff ALLAH-EL to enter the basement in order to subject him to discipline and/or termination.**

38. As another example of Defendants' retaliatory conduct, Defendant STRICKLAND routinely changed Plaintiff ALLAH-EL's scheduled security post to a less desirable one. Each time Plaintiff ALLAH-EL objected, Defendant STRICKLAND came within inches of his face and screamed, "I run stuff. You are going to do as I say" and/or "You don't run shit here." Defendant STRICKLAND also repeatedly cursed at Plaintiff ALLAH-EL and threatened him.

39. The above are just some examples of Defendant STRICKLAND's retaliatory conduct.

40. On or about September 30, 2019, more than one month after his original complaint of sexual harassment, Defendant ACACIA NETWORK *finally* provided Plaintiff ALLAH-EL with a New York State "Model Complaint Form for Reporting Sexual Harassment."

41. That same evening, on or about September 30, 2019, at approximately 11:58 pm, Plaintiff PEREZ concluded his shift and entered the men's locker room to change out of his uniform. **As Plaintiff PEREZ changed, and while his pants were already removed, Defendant STRICKLAND started to enter the men's locker room to watch Plaintiff PEREZ undress. Plaintiff PEREZ tried to push the door closed, so that Defendant STRICKLAND could not see him in his underwear. Nevertheless, Defendant STRICKLAND continued to push against the door, so that she could enter the men's locker room,** and shouted that Plaintiff PEREZ had been "out of uniform" during his shift

7

because he wore white sneakers. Plaintiff PEREZ responded that he was forced to change into his white sneakers because his work shoes had torn. Eventually, Defendant STRICKLAND relented and stopped trying to enter the men's locker room. The entire incident was captured on Defendant ACACIA NETWORK's video surveillance.

42. Defendant STRICKLAND tried to enter the men's locker room as a means of sexually harassing Plaintiff PEREZ and retaliating against[3] him for his earlier involvement in Plaintiff ALLAH-EL's sexual harassment complaint to Defendants' Human Resources.

43. Plaintiff PEREZ endured severe emotional distress and humiliation following the locker room incident with Defendant STRICKLAND and was visibly shaking after he left work.

44. Immediately following his shift, Plaintiff PEREZ filed a police report with the New York City Police Department's 41st precinct, located at 1035 Longwood Avenue, Bronx, NY 10459.

45. On or about October 1, 2019, Plaintiff PEREZ called Ms. Martinez and complained about Defendant STRICKLAND's sexual harassment. Plaintiff PEREZ also informed Ms. Martinez that he intended to pursue legal action, including filing a complaint with the New York State Division of Human Rights, and pressing criminal charges.

46. On or about October 2, 2019, based on concerns that Plaintiff PEREZ planned to pursue legal action, Defendant ACACIA NETWORK's management admitted that it had "recovered" the video footage of the locker room incident between Defendant STRICKLAND and Plaintiff ALLAH-EL.

47. Defendant ACACIA NETWORK's management also admitted to having video footage of the

---

[3] Plaintiff Perez was the only individual from the September 5, 2019 meeting whom Defendant STRICKLAND could discipline and/or retaliate against.

locker room incident between Defendant STRICKLAND and Plaintiff PEREZ.

48. Following Plaintiff PEREZ' sexual harassment complaint, and in an attempt to bribe him from further escalating his complaint, Defendant STRICKLAND told Plaintiff PEREZ that she planned on promoting him.

49. On or about October 7, 2019, Plaintiffs filed complaints with the New York State Division of Human Rights.

50. On or about October 8, 2019, Defendant ACACIA NETWORK terminated Defendant STRICKLAND. Defendant ACACIA NETWORK terminated Defendant STRICKLAND in an attempt to evade liability rather than a genuine interest in protecting its staff from sexual harassment. Indeed, Defendant ACACIA NETWORK took no remedial action following Plaintiff ALLAH-EL's sexual harassment complaint, causing Plaintiff PEREZ to endure the same sexual harassment.

51. On or about October 25, 2019, Defendant STRICKLAND called Plaintiff ALLAH-EL on the telephone, threatened him with physical violence because of his sexual harassment complaint, and said, "**Instead of talking shit to the people…tell them how you suck dick, you big butt faggot, and when you go back to work, I'm gonna fuck you up.**"

52. On or about October 27, 2019, fearing for his safety, Plaintiff ALLAH-EL filed a police report against Defendant STRICKLAND and ended his employment with Defendant ACACIA NETWORK, several days before his scheduled end date.

53. Defendants' actions were intended to, and did, constructively discharge Plaintiff ALLAH-EL.

54. Defendants' actions were intended to create a work environment that no reasonable person would tolerate.

55. Defendants would not have harassed Plaintiffs but for their sex/gender.

56. Defendants would not have retaliated against Plaintiffs but for their opposition to Defendants' unlawful employment practices.

57. As a result of Defendants' discriminatory and intolerable treatment of Plaintiffs, they suffered and continue to suffer severe emotional distress and physical ailments.

58. As a result of Defendants' actions, Plaintiffs felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

59. As a result of the acts and conduct complained of herein, Plaintiffs have suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiffs have also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

60. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiffs demand Punitive Damages as against all Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION
### UNDER TITLE VII
### <u>DISCRIMINATION</u>
### (AS TO DEFENDANT ACACIA NETWORK ONLY)

61. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

62. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964; 42 U.S.C. Section 2000e *et seq*., as amended, for relief based upon the unlawful

employment practices of the above-named Defendant. Plaintiffs complain of Defendant ACACIA NETWORK's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender.

63. Defendant ACACIA NETWORK engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiffs because of their sex/gender.

## AS A SECOND CAUSE OF ACTION
## UNDER TITLE VII
## <u>RETALIATION</u>
## (AS TO DEFENDANT ACACIA NETWORK ONLY)

64. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

65. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to … discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he had made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

66. Defendant ACACIA NETWORK engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiffs with respect to the terms, conditions, or privileges of employment because of their opposition to the unlawful employment practices of Defendants.

## AS A THIRD CAUSE OF ACTION
## UNDER STATE LAW
## DISCRIMINATION

67. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's . . . sex … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

69. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiffs because of their sex/gender, together with sexual harassment, creating a hostile work environment, and constructive discharge.

70. Plaintiffs hereby make a claim against Defendants under all applicable paragraphs of Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION
## UNDER STATE LAW
## RETALIATION

71. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

12

73. Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against the Plaintiffs because of Plaintiffs' opposition to their employer's unlawful employment practices.

### AS A FIFTH CAUSE OF ACTION
### UNDER STATE LAW
### AIDING AND ABETTING

74. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

75. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

76. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct.

### AS A SIXTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### DISCRIMINATION

77. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

78. The Administrative Code of City of New York § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived … gender … of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person

in compensation or in terms, conditions or privileges of employment."

79. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiffs because of their sex/gender, together with sexual harassment, creating a hostile work environment, and constructive discharge.

### AS A SEVENTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### RETALIATION

80. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

81. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

82. Defendants engaged in unlawful employment practices by retaliating, and otherwise discriminating against Plaintiffs.

### AS AN EIGHTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### AIDING & ABETTING

83. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

84. The New York City Administrative Code Title 8-107(6) provides that it shall be an unlawful

discriminatory practice, "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this chapter, or attempt to do so."

85. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct.

**WHEREFORE,** Plaintiffs respectfully request a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, the New York Executive Law, the Administrative Code of the City of New York; and that the Defendants harassed and discriminated against Plaintiffs on the basis of their sex/gender, together with sexual harassment, creating a hostile work environment, retaliation, and constructive discharge;

B. Declaring that Defendants intentionally caused Plaintiffs emotional distress.

C. Awarding damages to the Plaintiffs for any lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices;

D. Awarding Plaintiffs compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation in an amount in excess of the jurisdiction of all lower courts;

E. Awarding Plaintiffs Punitive Damages;

F. Awarding Plaintiffs attorney's fees, costs, and expenses incurred in the prosecution of the action;

G. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiffs request a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: October 2, 2020
      New York, New York

                                        **Phillips & Associates, PLLC**
                                        *Attorneys for Plaintiffs*

By: _____
      Gregory W. Kirschenbaum, Esq.
      45 Broadway, Suite 430
      New York, NY 10006
      (212) 248-7431